* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser, with modifications.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement, which was admitted into the record, and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates, an employee-employer relationship existed between plaintiff and defendant-employer.
3. On all relevant dates, the carrier liable on the risk is was Builder's Mutual Insurance Company.
4. Plaintiff's average weekly wage will be determined by an Industrial Commission Form 22 Wage Chart.
5. At and subsequent to the hearing, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. An Industrial Commission Form 22 Wage Chart, which was admitted into the record, and marked as Stipulated Exhibit (3);
 c. A Packet containing Defendants' Answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents and Industrial Commission Forms, which was admitted into the record, and marked as Stipulated Exhibit (4).
6. The issues to be determined are as follows:
 a. whether plaintiff sustained a compensable injury by accident on or about April 10, 2003, and if so, to what, if any, indemnity or medical compensation benefits is he entitled;
 b. whether plaintiff is entitled to ongoing medical treatment; and
 c. whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On all relevant dates, Coates Electric regularly employed three or more persons including plaintiff.
2. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter.
3. All parties have been correctly named, and there is no question as to misjoinder or non-joinder of parties.
4. At the time of the hearing before the Deputy Commissioner, plaintiff was 46 years old, having a date of birth of June 15, 1958. Plaintiff is a high school graduate and completed one year of community college. At the time of the hearing before the Deputy Commissioner, plaintiff was employed by Laney Electric, a job which he began on October 12, 2004. Prior to that position, plaintiff worked for Cape Fear Electric for approximately two months.
5. Plaintiff began his employment with Coates Electric on July 24, 1994, as an electrician. In that capacity plaintiff's duties involved repairing, installing and maintaining electrical systems, including interior and exterior conduits, light and power circuits, and switches. The performance of these duties required plaintiff to climb ladders, reach, stoop, bend, and lift various weights.
6. On April 10, 2003, plaintiff was working for Coates Electric at the shipping and receiving area at the University of North Carolina at Wilmington. At the hearing before the Deputy Commissioner, plaintiff testified that he climbed a ladder while carrying a shop vacuum, lost his balance, and fell onto the concrete floor, injuring his back. Following this incident, plaintiff continued working until the end of his shift, although he testified to experiencing pain in his back that required occasional sitting.
7. Eric Goldbloom was assigned by Coates Electric to work with plaintiff on the date in question. At the hearing before the Deputy Commissioner, Goldbloom testified that he heard a loud banging noise on the date in question, then turned and observed plaintiff rising from the concrete floor while holding his back. Henry A. Bats, Jr., is the shipping and receiving clerk for the area where plaintiff and Goldbloom were working on April 10, 2003. Bats testified that he observed plaintiff at nearly the top of the eight-foot ladder and that plaintiff had a shop vacuum in his hands. Bats further testified that he heard plaintiff yell and upon reaching plaintiff's location, found him on the floor and the fallen ladder.
8. Although plaintiff did not report this incident to his supervisor Rodney Coates on the day it occurred, he did so the following morning. At the time of this notification, plaintiff was asked by Mr. Coates if he was fine. Also on April 11, 2003, plaintiff was not given any instructions regarding medical treatment. Plaintiff did not request permission from his employer to seek medical attention at that time.
9. Plaintiff first sought medical attention at Hampstead Medical Group on April 14, 2003. On that date, plaintiff was evaluated by Evelyn DeVane, FNP, who noted plaintiff's reports of back pain and anxiety. Although Ms. DeVane did not note a work-related fall in her medical notes of April 14, 2003, she did write it on a prescription form of that same date. Subsequent to April 10, 2003, plaintiff continued to receive treatment at Hampstead Medical Clinic from Ms. Devane and Dr. Shyam Garg. One such appointment was on April 21, 2003; however, the records from that date do not refer to a work-related fall, and include a diagnosis of chronic pain, scoliosis, muscle pain and a muscle strain. During the period of plaintiff's treatment at Hampstead Medical Group, Dr. Garg ordered an MRI of plaintiff's back.
10. Plaintiff testified, and the Full Commission finds as fact, that on May 27, 2003, plaintiff returned to Hampstead Medical Group and reported having fallen from a dock into the water while boating the previous day. Plaintiff's back was already hurting at the time he fell and he did not strike anything while falling into the water. The medical records at Hampstead do not reflect that plaintiff fell into the water. The medical records do reflect that plaintiff reported experiencing pain down his right side through his buttocks and his mid-thigh. Plaintiff testified that the boating incident did not permanently change his pain or symptoms in any manner.
11. Subsequent to his fall and back injury of April 10, 2003, plaintiff's back pain and symptoms gradually worsened until on May 28, 2003, when he was unable to continue working for Coates Electric.
12. On May 28, 2003, plaintiff sought treatment from Dr. David Esposito, an orthopedist. Dr. Esposito's record reflects that plaintiff reported having experienced lower back pain for more than eight months with radicular or radiating symptoms into the right buttock and right leg, numbness in the buttocks, the right lower leg, and foot. These records also reflect that plaintiff denied any trauma, that he worked in a fairly labor intensive field, and that his symptoms were the result of wear and tear. Subsequent to his examination on May 28, 2003, plaintiff was referred for epidural injections. After receiving two injections, this treatment was discontinued because of a lack of effectiveness.
13. On September 8, 2003, plaintiff was examined by Dr. Bruce L. Kihlstrom, a neurosurgeon. Records from that date reflect that plaintiff reported having fallen off a ladder on April 10, 2003. Dr. Kihlstrom diagnosed plaintiff as having a ruptured disk on the right at L4-5 and a bone spur on the right at L3-4 for which surgery was performed on September 30, 2003. Following surgery, Dr. Kihlstrom provided post-operative treatment that included physical therapy and rehabilitation.
14. On March 25, 2004, Dr. Kihlstrom ordered a functional capacity evaluation that indicated plaintiff was capable of returning to work as an electrician with no restrictions. Additionally, Dr. Kihlstrom assigned plaintiff a ten-percent (10%) permanent partial disability rating for his back.
15. On the issue of causation, Dr. Kihlstrom has opined, and the Full Commission finds as fact, that the work-place fall of April 10, 2003 was the cause of the injuries for which he treated plaintiff.
16. In this case, there are some discrepancies between plaintiff's testimony and portions of his medical records. However, although probative, the contents of medical records are not determinative as to whether a work related injury occurred or on the issue of causation. The totality of the evidence in this case supports plaintiff's contention and testimony that he fell from a ladder while working for Coates Electric on April 10, 2003. Particularly important to the Full Commission is the testimony of Goldbloom and Bats.
17. Plaintiff's testimony regarding the circumstances of his injury, his symptoms, and his ability to work is accepted as credible by the Full Commission.
18. Plaintiff has produced sufficient evidence that he sustained his back injury at a judicially cognizable time and that such injury arose out of and was incurred during the course of his employment.
19. On April 10, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with Coates Electric in the form of a specific traumatic incident of the work assigned.
20. As the direct and natural result of, and causally related to, his April 10, 2003, injury by accident, plaintiff underwent surgery performed by Dr. Kihlstrom on September 30, 2003.
21. As the result of his April 10, 2003, injury by accident and related surgery, plaintiff was unable to earn any wages in his position with Coates Electric or in any other employment for the period of May 29, 2003 through the date in July 2004 when he returned to work for Cape Fear Electric earning the same or greater wages as he had earned at the time of his injury.
22. As reflected in the parties' Stipulations, an Industrial Commission Form 22 Wage Chart has been submitted from which plaintiff's average weekly wage was to be calculated. However, due to the incorrect manner in which this form was completed, it cannot be used for that purpose. Accordingly, the full commission has referred to the other Stipulated Industrial Commission Forms that reflect an average weekly wage of $700.00. That amount yields a compensation rate of $466.90.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On April 10, 2003, plaintiff's average weekly wage was $700.00, which yields a compensation rate of $466.90 per week. N.C. Gen. Stat. §97-2(5).
2. Plaintiff has produced sufficient evidence for the Full Commission to conclude that he sustained his back injury at a judicially cognizable time. See, e.g., Fish v. Steelcase Inc., 116 N.C. App. 703, 449 S.E.2d 233
(1994) cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995). The claimant does not have to show any unusual circumstances, but instead must show the back injury arose in the course of the employment and that the injury was the "direct result of a specific traumatic incident of the work assigned." Caskie v. R.M. Butler Co., 85 N.C. App. 266, 354 S.E.2d 242
(1987). The injury and pain do not have to occur simultaneously for claimant to establish that he sustained a compensable injury. Roach v.Lupoli Const. Co., 88 N.C. App. 271, 362 S.E.2d 838 (1987). It is sufficient for the plaintiff to point to a series of contemporaneous events which could have caused his back injury. Richards vs. Town ofValdese, 92 N.C. App. 222,374 S.E.2d 116 (1988), cert. denied, 324 N.C. 337,378 S.E.2d 799 (1989).
3. On April 10, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with Coates Electric in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6). As the direct and natural result of, and causally related to, his April 10, 2003, injury by accident, plaintiff underwent surgery performed by Dr. Kihlstrom on September 30, 2003. Id.
4. As a result of his April 10, 2003 injury by accident and related surgery, plaintiff is entitled to be paid by defendants total disability compensation at the rate of $466.90 per week for the period of May 29, 2003, through the date in July 2004 when plaintiff returned to work for Cape Fear Electric. N.C. Gen. Stat. § 97-29.
5. As a result of his April 10, 2003 injury by accident and related surgery, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred. N.C. Gen. Stat. §§ 97-25,97-25.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff total disability compensation at the rate of $466.90 per week for the period of May 29, 2003 through the date in July 2004 when plaintiff returned to work for Cape Fear Electric. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein. Defendants shall pay interest thereon at the rate of 8 percent per year from October 13, 2004, until paid.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as a result of his April 10, 2003 injury by accident and related surgery.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. Defendants shall deduct this amount from the amounts due plaintiff and shall pay it directly to counsel for plaintiff.
4. Defendants shall pay the costs.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________________ BUCK LATTIMORE CHAIRMAN
 S/_________________ DIANNE C. SELLERS COMMISSIONER